**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:20-cv-01271-SRC |
| | ) | |
| ARRONDA WILLIAMS, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

**Memorandum and Order**

While owing over $60,000 in restitution to the United States, Arronda Williams sold property purportedly worth $100,000 to Chambria Sherrard for $32,000, who in turn sold it to a friend of Williams for $105,000. The United States claims Williams sold the property to shield the property's equity from the United States to avoid paying restitution and, therefore, these dealings constitute fraudulent transfers under the Fair Debt Collection Practices Act. The United States filed suit asserting three counts under the FDCPA against Williams and Sherrard. Defendants move to dismiss all claims. The Court denies the motions, finding that the United States has sufficiently stated its claims.

## I. Background

The United States filed suit seeking remedies against Williams and Sherrard after they allegedly fraudulently transferred property. Doc. 1. The United States asserts three counts under the Federal Debt Collections Practices Act, 28 U.S.C. §§ 3301–3308, against both Williams and Sherrard: 1) fraudulent transfer in violation of 28 U.S.C. § 3304(a)(1), 2) fraudulent transfer in violation of 28 U.S.C. § 3304(b)(1)(A), and 3) fraudulent transfer in violation of 28 U.S.C. § 3304(b)(1)(B). *Id*. Williams and Sherrard filed motions to dismiss, arguing that the United

States failed to allege sufficient facts to support any of its claims under the FDCPA. Docs. 16–17.

**II. Well-pleaded factual allegations**

Before analyzing the specific elements of the United States' claims, *Iqbal* instructs the Court to first identify the allegations in the Complaint not entitled to the assumption of truth and then to assume the veracity of the well-pleaded factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009). *Iqbal*, likewise, does not require the Court to state here every well-pleaded factual allegation contained in the Complaint.

After Williams pleaded guilty to six fraud-related crimes, Judge John Ross sentenced Williams to a forty-one-month term of imprisonment followed by a three-year term of supervised release, and ordered her to pay $79,214.55 in criminal restitution. Doc. 1 at ¶¶ 8–10; *see also United States v. Williams*, Case No. 4:14-cr-00363-JAR-1. Judge Ross entered a Final Order of Forfeiture, directing Williams to pay a forfeiture money judgment in the amount of $79,214.55 to the United States. *Id*. at ¶ 11. As of September 16, 2020, Williams still owed $60,478.34. *Id*. at ¶ 12.

Around the time of her July 1, 2015 conviction, Williams had an ownership interest in property located at 1309 Northvale, Saint Louis, Missouri. *Id*. at ¶ 14. In 2006, Williams obtained a purchase-money mortgage to finance the purchase of the Northvale property. *Id*. at ¶ 16. On December 22, 2015, the United States placed a judgment lien on the Northvale property. *Id*. at ¶ 17. In February 2016, the United States filed an abstract of judgment against the Northvale property. *Id*. at ¶ 18.

In May 2016, Deutsche Bank National Trust—the alleged trustee for the entity holding the deed of trust for the Northvale property—filed a petition in Missouri state court for judicial

foreclosure of the Northvale property. *Id*. at ¶¶ 19–20. Deutsche Bank alleged that a default occurred because Williams failed to make installment payments due and owing. *Id*. at ¶ 20. Deutsche Bank named the United States as a defendant in the state court action, and the parties entered into a consent agreement providing that the United States' liens were junior to Deutsche Bank's deed of trust. *Id*. at ¶ 21–22. In July 2017, the state court issued a judgment permitting Deutsche Bank to foreclose the Northvale property. *Id*. at ¶ 23. The foreclosure did not occur. *Id*. at ¶ 24.

In January 2020, Williams contracted with Sherrard to sell the Northvale property for $32,000. *Id*. at ¶ 25. $29,880.55 was used to pay the first mortgage loan on the Northvale property, while the remainder was used to pay closing costs and other taxes. *Id*. Upon information and belief, the United States alleges that the Northvale property's actual value at the time of the sale exceeded $100,000. *Id*. at ¶ 26. Williams knew about the United States' liens at the time of the sale and Sherrard obtained title subject to the liens. *Id*. at ¶¶ 27, 29. Sherrard knew about the criminal monetary debts Williams owed to the United States at the time of sale. *Id*. at ¶ 30.

In June 2020, Sherrard sold the Northvale property to a third-party purchaser for approximately $105,000. *Id*. at ¶ 28. Investigators from the United States Marshals Service interviewed Sherrard shortly after the sale. *Id*. at ¶ 32. During the interview, the investigators learned that: 1) the third-party purchaser is a friend of Williams, 2) Williams found the third-party purchaser and arranged the sale for $105,000, 3) no real estate agent or broker facilitated the transaction, and 4) Sherrard did not have to spend any money on improvements to the property between January and June 2020. *Id*. None of the $73,000 windfall from the June 2020 sale of the Northvale property was used to pay Williams' criminal restitution. *Id*. at ¶ 34.

**III. Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief." To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court must liberally construe a complaint in favor of the plaintiff. *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. "A pleading that merely pleads labels and conclusions or a formulaic recitation of the elements

of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (internal quotations omitted). Although courts must accept all factual allegations as true, they are not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677–78.

Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679. Therefore, a court must determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id*. This "context-specific" task requires the court to "draw on its judicial experience and common sense." *Id*. at 679, 682. In determining the plausibility of a plaintiff's claim, *Iqbal* and *Twombly* instruct the Court to consider whether "obvious alternative explanations" exist for the allegedly unconstitutional conduct. *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567. The Court must then determine whether the plaintiff plausibly alleges a violation of the law. *Iqbal*, 556 U.S. at 682. The well-pleaded facts must permit more than the "mere possibility of misconduct." *Id*. at 679. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).

## IV. Discussion

### A. 3304(a)(1)

In Count I, the United States alleges constructive fraud in violation of section 3304(a)(1) of the FDCPA. That provision states:

> **(a) Debt arising before transfer.**—Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States which arises before the transfer is made or the obligation is incurred if

> **(1)**
>
> **(A)** the debtor makes the transfer or incurs the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and
>
> **(B)** the debtor is insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation.

28 U.S.C. § 3304(a)(1). Defendants argue that the United States failed to sufficiently allege the following elements: 1) a transfer made or obligation incurred, 2) by a debtor as to a debt to the United States, and 3) that debtor is insolvent at that time or becomes insolvent as a result of the transfer or obligation. The Court finds that the United States has sufficiently pleaded these elements.

**1. "Transfer made or obligation incurred"**

The FDCPA defines a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." 28 U.S.C. § 3301(6). Thus, "a transfer" requires "disposing of or parting with an asset or interest in an asset." *Id*. The statute defines an "asset" as the "property of a debtor," but expressly excludes "property to the extent it is encumbered by a valid lien." 28 U.S.C. § 3301(2)(A). Under the FDCPA, a "valid lien" as "a lien that is effective against the holder of a judicial lien subsequently obtained in legal or equitable proceeding." 28 U.S.C. § 3301(7). The statute further defines "lien" as "a charge against or an interest in property to secure payment of a debt and includes a security interest created by agreement, a judicial lien obtained by legal or equitable process or proceedings, a common law lien, or a statutory lien." 28 U.S.C. § 3301(5). In other words, if a debtor has equity in the property, then the debtor has an interest in the asset.

Here, the United States alleges that Williams obtained a purchase-money mortgage to finance the purchase of the Northvale property in 2006. The United States filed a judgment lien

on the property in December 2015, and then filed an abstract of judgment against the property in February 2016. In May 2016, Deutsche Bank—the trustee for the entity holding the deed of trust for the Northvale property—filed a petition in Missouri state court for judicial foreclosure of the property, alleging that Williams defaulted under the terms of the deed of trust. During the state court proceeding, the United States entered into a consent agreement with Deutsche Bank, agreeing that its liens "were junior to Deutsche Bank's deed of trust." Doc. 1 at ¶ at 22. The state court issued a judgment in favor of Deutsche Bank permitting it to foreclose on the Northvale property.

As previously stated, the FDCPA exempts property to the extent it is encumbered by a valid lien. While no Eighth Circuit case has addressed this issue, the Sixth Circuit has explained that establishing that a property is not encumbered for purposes of being an asset under the FDCPA requires demonstrating that the property is worth more than the encumbrances on the property. *United States v. Osborne,* 807 F. App'x 511, 519 (6th Cir. 2020). Thus, for the United States to adequately state a claim, it must plead that the Northvale property was worth more than the amount owed to Deutsche Bank under the terms of the deed of trust when Williams sold the property to Sherrard in January 2020. In other words, it must allege that Williams had equity in the property.

Here, the United States alleges that the Northvale property's value exceeded $100,000 at the time of sale, Williams sold the property for $32,000, Sherrard obtained the title of the property, and $29,880.55 of the proceeds was used to pay the first mortgage loan (the Deutsche Bank mortgage). As a result, when the property later sold for $105,000, Williams realized a windfall of around $73,000. These allegations indicate that the property had $73,000 of equity at the time of sale. Moreover, the United States further asserts that Williams sought to conceal this

equity from the United States by selling the property to Sherrard. Therefore, the United States sufficiently alleges that Williams had equity in the property at the time of the transfer. Accordingly, the Court finds that the Northvale property constitutes an asset under the FDCPA and, thus, the United States sufficiently alleged a "transfer" under the FDCPA.

**2. "By a debtor as to a debt to the United States"**

The FDCPA defines "debt" as money owed to the United States on account of restitution. 28 U.S.C. § 3002(3)(B). A "debtor" is a "person who is liable for a debt or against whom there is a claim for a debt." 28 U.S.C. § 3002(4). Here, the United States alleges that Williams owes restitution to the United States and, thus, sufficiently pleads that she is a "debtor" that owes "a debt to the United States."

**3. "[D]ebtor is insolvent at that time or becomes insolvent as a result of the transfer or obligation"**

Under the FDCPA, "a debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." 28 U.S.C. § 3302(a). The debtor is "presumed insolvent if he fails to pay his debts as they become due." 28 U.S.C. § 3302(a). Here, Williams defaulted on her mortgage and had a judgment entered against her by Deutsche Bank. As the United States alleges, this debt remained unpaid at the time of the transfer and the value Williams received from the sale was used to pay the mortgage. Moreover, the United States also alleges that Williams "still owes $60,478.34 in restitution[.]" Doc. 1 at ¶ 12. Williams's criminal case docket, cited in the complaint, also reflects that she failed to timely pay her restitution debts multiple time since she sold the property in January 2020. *See United States v. Williams*, Case No. 4:14-cr-00363-JAR-1, Doc. 424 (E.D. Mo. 2014); *see also Miller v. Redwood Toxicology Laboratory, Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) ("When considering . . . a motion to dismiss under Fed. R. Civ. P. 12(b)(6)[ ], the court may . . . consider some materials

that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." (citations omitted)).

Accordingly, the Court applies the presumption of insolvency under 28 U.S.C. § 3302(a) and finds that the United States has sufficiently alleged that Williams was insolvent at the time of transfer or became insolvent as a result of the transfer. *See Vancampen v. U.S., ex rel. I.R.S.*, No. CIV. A. 95-1436-FGT, 1997 WL 873537, *4 (D. Kan. July 9, 1997) (applying the presumption when defendant owed more than $50,000 to Kansas Bankers Surety Company as well as unpaid income taxes.). Having found that the United States pleaded the elements of a claim under 28 U.S.C. § 3304(a)(1), the Court denies Defendants' motion as to Count I.

**B. 3304(b)(1)(A)**

In Count II, the United States alleges actual fraud in violation of section 3304(b)(1)(A) of the FDCPA. That provision states:

> **(b) Transfers without regard to date of judgment.—**
>
> **(1)** Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation—
>
> **(A)** with actual intent to hinder, delay, or defraud a creditor[.]

28 U.S.C. § 3304(b)(1)(A). Defendants argue that the United States failed to sufficiently allege that Williams had actual intent to hinder, delay, or defraud a creditor. Doc. 16 at p. 3.

In determining actual intent, courts may consider numerous factors, including whether "the transfer . . . was disclosed"; "the debtor removed or concealed assets"; "the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred"; and "the debtor was insolvent or became insolvent shortly after the transfer was

made." 28 U.S.C. § 3304(b)(2)(C), (G), (H), (I). Courts refer to these factors as "badges of fraud." *United States v. Schippers*, 982 F. Supp. 2d 948, 953 n. 4 (S.D. Iowa 2013).

The United States alleges sufficient facts establishing some of these badges of fraud. For example, the United States alleges that Williams sold the Northvale property "to shield the property's equity from the United States in order to avoid paying criminal restitution." Doc. 1 at ¶ 33. Thus, the United States sufficiently alleges that a "debtor removed or concealed assets." 28 U.S.C. § 3304(b)(2)(G). Additionally, as the Court stated above, the United States sufficiently alleges that Williams "was insolvent or became insolvent shortly after the transfer was made." 28 U.S.C. § 3304(b)(2)(I).

The United States also alleges that the consideration Williams received from the sale of Northvale was not "reasonably equivalent to the value of the asset transferred." *Id*. at 3304(b)(2)(H). A debtor receives reasonably-equivalent value for a transfer "if the debtor receive[s] a fair exchange in the market place for the goods transferred." *In re Kendall,* 440 B.R. 526, 533 (8th Cir. BAP 2010). This inquiry turns primarily on the market value of the exchanged items. *Id*. But courts also consider "the good faith of the parties and whether the transaction was an arm's length transaction between a willing buyer and a willing seller." *Id*. Ultimately, whether a transfer was for reasonably-equivalent value is determined by "common sense, measured against market reality." *Id*. (internal quotation marks omitted) (citation omitted). Here, the United States alleges that the fair market value of the property at the time of sale in January 2020 exceeded $100,000, Sherrard purchased the property from Williams for $32,000, and the sale was not an arms-length transaction. Doc. 1 at ¶¶ 25, 26, 31. Based on these allegations, the Court reasonably infers that Williams sold the Northvale property at a price not reasonably-equivalent to its fair market value.

Accordingly, the United States pleads sufficient allegations to support numerous badges of fraud, and the Court concludes that the United States adequately alleges that Williams had actual intent to hinder, delay, or defraud a creditor. Therefore, the Court denies Defendants' motions to dismiss as to Count II.

C. **3304(b)(1)(B)**

In Count III, the United States alleges constructive fraud in violation of Section 3304(b)(1)(B) of the FDCPA. That provision states:

> **(b) Transfers without regard to date of judgment.**—
>
> **(1)** Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation—
>
> . . .
>
> **(B)** without receiving a reasonably equivalent value in exchange for the transfer or obligation if the debtor—
>
> . . .
>
> **(ii)** intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

28 U.S.C. § 3304(b)(1)(B)(ii). Defendants argue that the United States failed to allege that "Williams did not receive a reasonably-equivalent value in exchange for the transfer" or that she "intended to incur, or believed or reasonably should have believed that [s]he would incur, debts beyond h[er] ability to pay as they became due." Doc. 16 at pp. 3–4. The Court has already found that the United States sufficiently alleges that Williams did not receive reasonably-equivalent value in exchange for the sale of the Northvale property.

The Court also finds that the United States adequately alleges that Williams intended to incur, or believed or reasonably should have believed that she would incur, debts beyond her ability to pay as they became due when she sold the Northvale property. As noted, Williams has

failed to timely pay restitution multiple times since selling her property in January 2020. Thus, the Court can reasonably infer that she intended, or believed or reasonably should have believed that she would incur debts beyond her ability to pay as they became due when she sold the Northvale property. *See United States v. Becker*, No. 4:03-cv-01602-DDN, 2005 WL 6120994, at *14 (E.D. Mo. Sept. 25, 2005). Accordingly, the Court denies Defendants' motions to dismiss as to Count III.

In sum, having found that the United States adequately alleges each of its claims, the Court denies Defendants' [16] [17] motions to dismiss in their entirety.

The Court also notes that Williams filed a motion to stay proceedings, to stay discovery, and for a protective order. Doc. 21. The Court orders the parties to brief this motion in accordance with the Local Rules. *See* E.D. Mo. L.R. 4.01. The Court further orders that, unless otherwise ordered by the Court, Defendants must file an answer to the complaint no later than ten days after the Court issues its ruling on Williams's motion to stay proceedings, to stay discovery, and for a protective order.

So Ordered this 2nd day of March 2021.

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**